| 37 | 353 |
| 38 | 678 |
| 37 | 353 |
| 48 | 252 |
| 37 | 353 |
| 50 | 517 |
| 53 | 713 |
| 37 | 353 |
| 60 | 97 |

VICTOR G. LANTRY, APPELLANT, V. JAMES M. PARKER, APPELLEE.

FILED JUNE 29, 1893.   No. 5116.

1. Adverse Possession. Where land is especially adapted to the purposes of grazing and hay growing, and one claiming ownership thereto has every year for a period of more than ten years cut the grass, and harvested and disposed of the hay from such portions of the land as its character permitted, so using the land in connection with, and in the same manner as he used other tracts owned or claimed by him and adjacent thereto, there being at different periods fences or plowed strips not entirely enclosing the whole, but of such a character as to indicate a connection between the tracts, and where the person so using the land paid all the taxes thereon, and at intervals warned off trespassers and distrained cattle thereon found grazing, *held*, that such acts constituted actual, continuous, notorious, and adverse possession for the statutory period.

2. ———: COLOR OF TITLE: STATUTE OF LIMITATIONS. A tax deed purporting on its face to convey title to land, although void for failure to comply with the statute, affords color of title under the general statute of limitations.

3. ———: CLAIM BY NON-RESIDENT: POSSESSION BY AGENT. One may plead adverse possession and is entitled to the benefit of the statute relating thereto, although he was a non-resident and absent from the state during a portion or all of the period covered by his possession.

4. ———: ———: THE POSSESSION OF ONE'S AGENTS is, for the purpose of the statute of limitations, the possession of the principal.

26

APPEAL from the district court of Douglas county. Heard below before WAKELEY, J.

*Joseph H. Blair*, for appellant.

*Lake, Hamilton & Maxwell*, contra.

IRVINE, C.

Victor G. Lantry brought this suit in the district court of Douglas county against James M. Parker, to quiet his title to a tract of land designated as outlot 215 in the city of Florence. In his petition plaintiff alleged title and possession in himself, and averred that the defendant claimed under a tax deed, which was void and conveyed no title. The defendant, by a counter-claim, alleged title in himself by adverse possession, and alleged that shortly before the commencement of the suit his possession was forcibly invaded by agents of the plaintiff. The prayer was for an injunction restraining the plaintiff from molesting defendant in his possession of said tract, and for general relief. The district court found all the issues for the defendant, dismissed plaintiff's petition, quieted title in defendant, and enjoined plaintiff from asserting any interest in the property, and from interfering with defendant's possession.

Several questions are presented as to the admissibility of the evidence offered by plaintiff to establish his paper title. These questions it will not be necessary to determine.

In Nebraska the law is settled that the operation of the statute of limitations is to vest absolute title in the occupant, when he has maintained an actual, continued, notorious, and adverse possession under claim of ownership for the statutory period. (*Horbach v. Miller*, 4 Neb., 31; *Gatling v. Lane*, 17 Id., 77.) And the operation of the statute being to vest title in the occupant, a title so acquired may be made the basis of an affirmative claim for relief, as well as it may be interposed as a defense. (*Gregory v.*

*Langdon,* 11 Neb., 166.) If, therefore, the trial court was justified in finding the issue of adverse possession for the defendant, the nature of plaintiff's title was immaterial and the decree was right.

The evidence is in some respects conflicting—so much so that a finding either way upon this issue would probably have to be sustained. Upon the part of the defendant the evidence tended to show that defendant commenced to use the land in 1862 as a pasture and continued such use until about 1870; that from that year he had used it continuously as hay land. In 1874 the defendant bought the land at tax sale, and in 1876 a tax deed was issued to him, the deed being void because of several defects admitted to be fatal. Since obtaining this deed, the evidence tends to show that every year the grass has been cut by Parker's agents upon so much of the land as permitted this use; that the land is high and somewhat rough; that it is partially surrounded by other land of Parker's, and that all this land is best adapted to the purposes of grazing and growing hay; that the particular tract in controversy has been so used by Parker continuously in the same manner that he has used the other land owned or claimed by him adjacent thereto; that while the particular tract has never been entirely enclosed by defendant, Parker has at different periods erected fences and plowed strips in such a manner as to clearly indicate that he was treating the land in connection with his other property, and as forming a portion of a more extended tract. The evidence also tends to show that Parker has paid all the taxes, and has at times warned herders to keep off the land, and has distrained cattle of others grazing thereon. This evidence is, we think, sufficient to justify the trial court in finding that defendant had the notorious, continuous, and adverse possession of the land for the statutory period. The law does not require that possession shall be evidenced by a complete enclosure. nor

by persons remaining continuously upon the land, and constantly from day to day performing acts of ownership thereon. It is sufficient if the land is used continuously for the purposes to which it may be in its nature adapted. In the case of arable land it is not necessary, in order to hold possession, that one should continuously have a crop in the ground. It is sufficient if, during the seasons of the year when crops are grown, the land be used for that purpose; and from harvest to seed-time one's possession is not interrupted, although during that period no acts of ownership may be exercised. So here, we think, that the protection of the grass during the growing season, the cutting, curing, and disposal of the hay at the proper periods, constitute actual possession in the defendant, especially when taken in connection with his using it in like manner as the surrounding land, and his acts to prevent its use by others.

It is said that the evidence does not show that hay was cut from all of the land, and that the actual possession exercised cannot be extended by construction to the unused portion, because the tax deed void on its face was insufficient to afford color of title. This question has already been settled. The case of *Sutton v. Stone*, 4 Neb., 319, merely holds that a void tax deed will not support the special limitation provided by the revenue law, and to the same effect is the case cited by plaintiff of *Redfield v. Parks*, 132 U. S., 239. In *Gatling v. Lane*, 17 Neb., 77, and in the same case on rehearing, 17 Neb., 80, it is distinctly held that a tax deed, although void, does constitute color of title under the general statutes of limitation.

It is also contended that the defendant cannot claim the benefit of the statute because he has resided without the state during nearly the whole of the period since the tax deed was obtained. The proof shows such to be the fact, the possession being through defendant's agents. This contention is founded upon section 20 of the Code of Civil Procedure, providing that if, when a cause of action

accrues against a person, he be out of the state, the period limited for the commencement of the action shall not begin to run until he come into the state; and if, after the cause of the action accrues, he depart from the state, the time of his absence shall not be computed as any part of the period within which the action must be brought. Section 17 of the Code provides that the absence from the state, death, or other disability of a non-resident shall not operate to extend the period within which actions *in rem* shall be commenced by and against such non-resident, or his representatives. Section 20 therefore applies and excludes the defendant from the benefit of the statute, unless this be an action *in rem* within the meaning of section 17. Section 77 of the Code of Civil Procedure provides that service may be made by publication in actions which relate to, or the subject of which is, real or personal property in this state, where any defendant has or claims a lien or interest, actual or contingent therein, or the relief demanded consists wholly or partially in excluding him from any interest therein, and such defendant is a non-resident of the state or a foreign corporation. The validity of this statute, as sustaining decrees in suits to quiet title, was affirmed in *Watson v. Ulbrich*, 18 Neb., 186. It has also been affirmed by the supreme court of the United States in *Arndt v. Griggs*, 134 U. S., 316. In the latter case and in *Perkins v. Wakeham*, 86 Cal., 580, the jurisdiction of the courts in such cases to proceed against non-residents upon service by publication is based upon the power of a sovereign state to exercise jurisdiction over all property within its limits, and to adopt such reasonable legislation as will effectually enable the courts to reach out and adjudicate titles to such property. In the California case it is said, " while a decree quieting title is not *in rem*, strictly speaking, it fixes and settles the title to real estate, and to that extent certainly partakes of the nature of a judgment *in rem*." Mr. Justice Brewer, in *Arndt v. Griggs*, says, that a state has

control over property within its limits. "It cannot bring the person of the non-resident within its limits. Its process goes not out beyond its borders. But it may determine the extent of his title to real estate within its limits."

Upon a similar question the supreme court of Indiana says, in *Essig v. Lower*, 120 Ind., 239 : "While the decree is not *in rem* strictly speaking, yet it must be conceded that it fixed and settled the title to the land then in controversy, and to that extent partakes of the nature of a judgment *in rem*." So the supreme court of the United States, in *Boswell's Lessee v. Otis*, 9 How. [U. S.], 336*, said: "A bill for the specific execution of a contract to convey real estate is not strictly a proceeding *in rem*, in ordinary cases; but where such a procedure is authorized by statute, on publication, without personal service of process, it is, substantially, of that character."

In *Pennoyer v. Neff*, 95 U. S., 734, Mr. Justice Field says: "It is true that in a strict sense a proceeding *in rem* is one taken directly against property, and has for its object the disposition of the property without reference to the title of individual claimants; but in a larger and a more general sense the terms are applied to actions between parties where the direct object is to reach and dispose of property owned by them, or of some interest therein. Such are cases commenced by attachment against the property of debtors, or instituted to partition real estate, foreclose a mortgage, or enforce a lien. So far as they affect property in the state, they are substantially proceedings *in rem*, in the broader sense which we have mentioned."

Under sections 51 and 77 of the Code our statutory action of ejectment may be brought against a non-resident and service obtained by publication. These statutes are based upon the same principle as that relating to suits to quiet title. They are valid for the same reasons, and the nature of the action, when service by publication is resorted to, is, so far as this discussion is concerned, the same. In.

both cases they must be regarded, so far as the adjudication of title is concerned, as actions *in rem.* The object of the exception to the statute of limitations contained in section 20 of the Code is to prevent the running of the statute in cases where, by the defendant's absence from the state, the plaintiff is prevented from bringing his suit. He is not so prevented by the defendant's absence from beginning suit either to quiet title or in ejectment, and the reason of the exception does not apply in such cases. The object of the proviso quoted from section 17 was to prevent a too general application of section 20, and to permit the statute to run in those cases where by constructive service the plaintiff might proceed, notwithstanding defendant's absence. The term "actions *in rem*" was evidently used in section 17 in the same sense in which the courts have said that suits to quiet title upon constructive service are actions *in rem.* We think, therefore, that the defendant was entitled to the benefit of the statute, and the trial court having found, upon evidence sufficient to sustain the finding, that he had the actual, continuous, notorious, and adverse possession for the statutory period, the judgment is

AFFIRMED.

THE other commissioners concur.