J. P. TWOHIG v. PERRY LEAMER.

FILED MAY 6, 1896.    No. 6557.

1. **Witnesses: FORMER TRIAL: RECOLLECTION OF TESTIMONY OF DECEASED PERSON.** The evidence of a witness, given or used on the trial of a cause and who has since died, is competent on a subsequent trial of the same action, and where not in the form of deposition or preserved in any manner prescribed or contemplated by law, may be stated by any person who heard it given and who recollects and can state it substantially.

2. ———: ———: ———. Before a witness can be allowed to give his recollection of the evidence of a deceased witness, it must be

shown, as a foundation for the introduction of such evidence in such manner, that it was given or taken for use in a former action between the same litigants, that the party against whom it was given had, from the manner of its reception, an opportunity to cross-examine the deceased witness, that it involved the same subject-matter, and that the witness called to state it recollects and can repeat in substance the evidence of the deceasd witness.

3. ———: ———: ———. Where, in a trial before the judge of a district court without the intervention of a jury, a witness was allowed to state his recollection of the evidence of a witness given at a former trial of the case who had since died, no sufficient foundation having first been laid for the introduction of the evidence in such manner, and the witness making statements in giving his evidence, which would have completed the foundation for its introduction, it renders the evidence competent for consideration in the determination of the issues in the action and cures the error, if any, committed by its admission.

4. Ejectment: VOID TAX DEEDS. A void tax deed affords color of title in an action of ejectment in which adverse possession of real estate for the statutory period of ten years is relied upon as a defense.

5. ———: ADVERSE POSSESSION: STATUTE OF LIMITATIONS. To establish title to real property in this state by virtue of the operation of the statute of limitations there must have been maintained by the party asserting it an actual, continuous, notorious, and adverse possession of the premises under claim of ownership during the full period required by the statute. (*Gatling v. Lane*, 17 Neb., 77; *Lantry v. Parker*, 37 Neb., 353.)

6. ———: ———: ———. The evidence in this case examined, and *held* to show such acts in respect to a piece of land not suitable to general farming purposes, but fit for grazing, and a portion of which was what is termed "hay land," as constituted actual, continued, notorious, and adverse possession for the time required by statute.

ERROR from the district court of Dakota county. Tried below before NORRIS, J.

*W. E. Gantt*, for plaintiff in error.

*R. E. Evans*, contra.

HARRISON, J.

This, an action of ejectment, was commenced by the plaintiff in the district court of Dakota county, to recover possession of the south half of the southeast quarter of

the northwest quarter of section 18, township 28 north, of range 9 east.   The defenses stated in the answer were adverse possession in the defendant and his grantor for more than ten years prior to the commencement of the action, the possession of the grantor being, it was alleged, under a tax deed issued to him by the treasurer of Dakota county.   There was also pleaded in the answer the payment by defendant and his grantor of all taxes assessed against the land in controversy for the years 1865 and each succeeding year up to and including 1890. There was a reply filed and a trial of the cause and judgment rendered, which, as is the practice, was set aside on motion of the defeated party.  Subsequently amendments of the pleadings, or some of them, were allowed to be made, but we need not particularly notice them.  A second trial of the issues to the presiding judge, a jury being waived, resulted in a judgment in favor of defendant, and seeking its reversal, the plaintiff presents the case to this court by error proceedings.

The first objection of plaintiff to which our attention has been directed by counsel in the arguments in the brief of questions presented for review is that the trial judge erred in admitting the testimony of M. C. Beck, who was called to state the evidence given in this case before him as referee, by a witness since deceased.   It is contended that no sufficient foundation was laid for the introduction of the testimony to which we have referred. It must be borne in mind, in solving this question, that the trial in progress was before the judge, without the intervention of a jury, and that the trial judge, if such was the fact, admitted this evidence without the proper foundation having been laid for its introduction, would not be sufficient to call for a reversal of the judgment. The judge, where the trial is to him without the intervention of a jury, is presumed to sift the evidence and base his findings on that which is proper and competent, and that alone.   It was of the record of this case that there had been a prior trial of it.   It was shown that Mr. Beck,

the witness being interrogated, had at one time been appointed referee to take testimony in this case; that as such referee he took the testimony of one Thomas L. Griffey, who had died some time between the date of taking his evidence by the referee and the time of this the second trial of the cause, and it was further shown that the report of the referee containing the evidence of the deceased witness, Thomas L. Griffey, had been filed in the proper office and made of the papers in the case, but had been lost or mislaid. After the foregoing facts appeared in evidence, Mr. Beck was asked to state what testimony Thomas L. Griffey had given relative to his title or claim to the property in controversy in this action, and the counsel for plaintiff then objected to the proposed evidence, as "incompetent, irrelevant, and immaterial; further, the witness has not shown himself competent, for the reason that he does not show that he remembers what was said." This objection was overruled and the evidence admitted. The objection was well taken. It had not been shown that the witness then testifying recollected and could state the substance of the evidence given by the deceased witness. Unless Mr. Beck did recollect and could state the substance of the evidence by such witness, his evidence should not have been admitted, and that he could do so should have been made to appear before he was allowed to testify; but, as we have seen, the mere erroneous admission of this evidence in the trial of the cause before the judge without a jury does not call for the reversal of the judgment. The witness, as a preface to his testimony, said that his recollection was not very vivid as to Mr. Griffey's testimony, but that he remembered something of the substance of it, and in attempting to state it he at all times gave, as he said, what the deceased witness had testified, not the sense or meaning which he, Beck, had drawn from the testimony of Griffey, and was clothing in words, but in substance, the evidence he had heard as referee. This rendered the testimony of this witness competent to be

considered by the judge in a determination of the issues in the cause, if it was not open to the further criticism urged against it by counsel under this same objection, viz., that it should have been shown that at the time the evidence of the deceased witness was taken there was a cross-examination on behalf of plaintiff, or an opportunity afforded for it.   It has been said that it must appear that there was a cross-examination of the deceased witness at the time the testimony was taken which it is purported to have detailed, by another witness, as evidence in a trial of the issues, in the action which takes place subsequent to the death of the witness, or that it was taken in such manner that an opportunity was offered for cross-examination by the opposing party to the one who called the witness and caused his testimony to be taken (1 Greenleaf, Evidence, note 2, sec.165); but in this case Griffey was the party to whom the tax deed was issued, and who was the grantor of defendant in the action, and it was as a portion of defendant's case that his evidence formerly taken was sought to be introduced, and in the cross-examination of Mr. Beck, who was called for the purpose of stating it, counsel for plaintiff, referring to the taking of the evidence of the deceased witness before the referee, asked this question: "Didn't he testify, in answer to my question if his possession was continuous, that he could not say that it was?"   From which the reasonable inference is that counsel was there representing plaintiff and participating in the taking of the testimony by cross-examining the witness, and it follows that this branch of the objection must be overruled.

The main and real controverted issue in the case was whether there had been such an adverse possession by defendant and his grantor as gave title to the land, and in regard to this it is strenuously urged that the findings and judgment of the court were not sustained by sufficient evidence; also that they were contrary to law. These two assignments we will consider together. The general rule is well established in this state that in order

to successfully claim title to real estate by virtue of the operation of the statute of limitations there must have been maintained by the party asserting it an actual, continued, notorious, and adverse possession of the premises, under claim of ownership, during the full period stated in the statute. (*Gatling v. Lane*, 17 Neb., 77; *Lantry v. Parker*, 37 Neb., 353.) It was admitted that the United States conveyed the title to the land in controversy to William F. Lockwood and James Virtue, by patent, and that they conveyed it to the plaintiff by a quitclaim deed in October, 1888. Just when the patent was issued to plaintiff's grantors does not appear, but it was probably some twenty years or more prior to the time they conveyed to him. Of date January 27, 1869, Thomas L. Griffey received from the treasurer of the county in which the land is situated a tax deed for it, which was duly recorded on the same day, and on April 24, 1885, Griffey conveyed by quitclaim deed whatever interest or title he had acquired in or to the land to the defendant in this action. It is conceded by counsel for defendant that the tax deed issued to defendant was void, and at most gave no more than color of title, but it constituted color of title, and any rights acquired by its holder by adverse possession of the land described in it would be in or to the whole of such land. A void tax deed affords color of title. (*Lantry v. Parker, supra.*) The land in dispute was shown to be of such nature as not to be fit for use for general farming purposes, but only for pasturage, or was what is commonly called in this state "hay land." It was said in the opinion in the case of *Lantry v. Parker, supra,* a case in which a piece of land was in controversy which was "best adapted to the purposes of grazing and growing hay," in regard to the necessary character of adverse possession of land of the kind described: "This evidence is, we think, sufficient to justify the trial court in finding that defendant had the notorious, continuous, and adverse possession of the land for the statutory period. The law does not require that possession shall be evi-

denced by a complete inclosure, nor by persons remaining continuously upon the land and constantly, from day to day, performing acts of ownership thereon.    It is sufficient if the land is used continuously for the purposes to which it may be, in its nature, adapted.    In the case of arable land it is not necessary, in order to hold possession, that one should continuously have a crop in the ground.    It is sufficient if, during the seasons of the year when crops are grown, the land be used for that purpose; and from harvest to seedtime one's possession is not interrupted, although during that period no acts of ownership may be exercised.    So here we think that the protection of the grass during the growing season, the cutting, curing, and disposal of the hay at the proper periods, constitute actual possession in the defendant."    The evidence in the case at bar was in some particulars conflicting, but it was admitted that Griffey and the defendant had paid the taxes assessed against the land, commencing with those of 1865, and for each succeeding year up to and including 1890.    This was a strong circumstance tending to establish the adverse holding and abandonment of the land by the holders of the legal title. (*Omaha & Florence Loan & Trust Co. v. Barrett,* 31 Neb., 804.)  The evidence on behalf of defendant tended to show that Griffey, when he received the tax deed in January, 1869, took possession of the land and did some work on it, a part of which consisted in digging out and removing from among the growing grass the small willows, and thus improving it in quality as hay land; also cutting the grass and making hay on the land, or allowing it to be done by other persons for him, or by his permission as owner of the land; that some twelve or fourteen years prior to the commencement of this suit, this land, with other lands adjoining, was inclosed or fenced.    This, it appears, was not done by Griffey, and he did not cause it to be done, but it was by his permission, given at request of the party who inclosed it; that the possession and use of it had been such that it was known in its vicinity as

"Griffey's land," and when any person desired to make use of it, application for the privilege was made to Griffey as owner, and that from the time in 1885, when the land was purchased by defendant, his use of it had been continuous. Viewed in the light of the rule announced in the case of *Lantry v. Parker, supra,* the evidence was sufficient to sustain the finding of the trial judge that there had been an adverse holding for the statutory period, and his judgment rendered in accordance with the finding was right. There are no other assignments of error discussed in the brief of counsel for plaintiff, and it follows from the foregoing conclusions that the judgment must be

AFFIRMED.