FRED LEWON V. THOMAS P. HEATH.

FILED FEBRUARY 17, 1898.   No. 7844.

1. **Descent and Distribution.** Lands of which a person dies seized, and which he has not devised, descend to the heirs, and the title vests in them, subject, however, to the debts of the ancestor.

2. **Ejectment: ACTION BY HEIR.** An heir may bring and maintain an action of ejec ment relative to lands of which his ancestor died se:zed against any and all persons except the administrator of the e.tate and such as have a right or rights thereto derived from the administrator, and this the heir may do during the pendency of the administration proceedings and prior to final settlement or any decree of distribution.

3. **Adverse Possession.** "To establish title to real property in this state by virtue cf the operation of the statute of limitations there must have been maintained by the party asserting it an actual, continuous, notorious, and adverse possession of the premises under claim of ownership during the full period required by the statute." (*Twohig v. Leamer*, 48 Neb. 248; *Gatling v. Lane*, 17 Neb. 77; *Lantry v. Parker*, 37 Neb. 353.)

4. ——: **EVIDENCE.** No definite or fixed rule can be framed in relation to what shall constitute *indicia* of adverse possession; such evidences must necessarily vary and be in accord with the conditions existent in the portion of the political division or subdivision in which the preperty to which it is claimed applicable is situate in regard to age of settlement, the extent and prevailing manner of cultivation, or use of lands, also the purposes for which the lands are or may be by nature adapted.

ERROR from the district court of Douglas county. Tried below before AMBROSE, J. *Reversed.*

*C. A. Baldwin,* for plaintiff in error.

*L. D. Holmes, contra.*

HARRISON, C. J.

The defendant in error commenced this, an action of ejectment, in the district court of Douglas county to recover the possession of a certain forty-acre tract of land. at the time in the possession of the plaintiff in error. One of the defenses interposed was that of adverse possession for more than the statutory period of ten years.

After issues joined and on the trial thereof it was of the instructions to the jury,—

"First—That the plaintiff has shown a complete legal title to the premises in controversy, and is in law the legal owner of the premises described in the petition, and is entitled to the possession thereof.

"Second—You are also instructed that upon the question of adverse possession, as set up in the defendant's answer, there has been a failure of proof upon his part, and that he has not shown such possession as the law contemplates to be adverse, open, notorious, and hostile for ten years prior to the commencement of this suit. You will, therefore, in rendering your verdict upon the question of the possession of the real estate described in the petition, find for the plaintiff."

It appeared in testimony that one William B. Lacey during the year 1860 obtained from the United States a patent conveying to him the land the recovery of the possession of which was sought in this suit. Lacey was a resident of the state of Ohio and there died leaving a widow and three sons, his heirs. After his death an administrator of his estate was appointed by the probate court of the proper county in Ohio, who entered upon the duties of the settlement of the estate of the deceased. Neither the intestate during his lifetime, his heirs, nor the administrator of his estate ever saw or had any actual physical possession of this land. The defendant in error introduced evidence of the conveyance by the widow to him of her interest in the land of date during the year 1888; also conveyances by the three sons of their interests respectively in and to the land, one of date during the year 1883, one 1884, and the other 1888. There was no competent evidence that a decree of distribution of the estate had ever been made by the probate court.

It is argued by counsel for plaintiff in error that in order to recover it devolved on the plaintiff in error, inasmuch as he claimed by conveyances from the heirs, to show a final settlement of the estate and a decree of dis-

tribution by the probate court having jurisdiction. The administrator of the estate has the right to possession of the real estate of which the decedent died seized and may collect the rents, issues, and profits thereof until the final settlement of the estate or until delivered to the heir or devisee by order of the probate court. (See section 202 of the law in regard to decedents, Compiled Statutes 1897, p. 527, ch. 23.) It is conceded that the construction of this section in connection with some others of our law relative to the same subject must govern the disposition of the point presented. Lands of which a person died seized, when not devised, descend to the heirs in the order designated in the statute, subject, however, to the debts of the deceased (Compiled Statutes 1897, p. 503, ch. 23, sec. 30); and it may be further said, subject to the administrator's statutory right of possession conferred by the section to which we have hereinbefore alluded. The title vests in the heirs as it did at common law. (*Shellenberger v. Ransom*, 41 Neb. 631; *Johnson v. Colby*, 52 Neb. 327.) There exists no reason or rule, aside from the statutes, which would seem potent in its call to us to declare that the heirs of a deceased person claiming title and possession of real estate of which their ancestor died seized, or a person claiming the title and right of possession of real estate by, through, or under them, shall not have the right to the possessory action of ejectment as against all persons in possession, except such as are so by right derived through, under, or from the administrator; nor, as we view and construe the provisions of the statutes on the subject separately or connectedly, do they furnish any forcible arguments or grounds for saying that to allow said heirs or their transferees the right to such action would place them as to their asserted rights and the administrator and his possessory rights in an irreconcilable or any conflict, or to hold that such heirs or persons may not enforce the right of possession by action as against all save and except the administrator or persons claiming by, through, or under him. If the title passes to and

vests in the heirs, as it most certainly does, then the possessory right goes with it, except to the extent it is placed by law in the administrator, which is not exclusively or absolutely, but optionally with him, and for purposes indicated by statute and for none other; and such purposes may be subserved and fulfilled consistently with the right of the heirs or persons claiming under them to assert and obtain possession of any save parties who are in as of right derived from the administrator.

In the case of *Territory v. Bramble*, 5 N. W. Rep. [Dak.] 945, it was said, in reference to a section of the probate act of the territory, in the exact words of the section 202 of our law which we are considering: "Our statute was taken from Wisconsin, whence it was taken from Michigan, and was afterward enacted in Nebraska and Oregon. A similar statute is found in Alabama and Mississippi, in all of which states it has received a judicial construction; and under the rule that a legislature taking a statute from the laws of another state gives to the new enactment the same construction given to it by the courts of the state from which it was taken, we may, with profit, inquire what construction was placed upon this statute by the court of Wisconsin and Michigan."

In *Kline v. Moulton*, 11 Mich. 370, the administrator had sold the real property without obtaining license, as required by the statute, and the grantee under the deed, while admitting that he got no title to the land, contended that he got all the right the administrator had, to-wit, the right of possession; but the court denied the right, and held that the administrator had no right of possession that he could sell or transfer."

In *Marvin v. Shilling*, 12 Mich. 356, the court stated: "In *Streeter v. Paton*, 7 Mich. 341, we had occasion to consider the effect of this statute on the rights of the heir, and came to the conclusion that the statute did not interfere with the descent of the real estate to the heir, and his right to take possession, or bring ejectment therefor against any one, except the administrator or some one in

possession under him, and that the object of the statute was to permit the personal representative of the deceased to take possession of the real estate and hold it until it should be sold by him under a license of the probate court, or the final settlement of the estate if he thought proper to do so, unless ordered to deliver it over to the heir by the probate court."

In the case of *Jones v. Billstein*, 28 Wis. 221, wherein from the facts it appeared that an administrator had sold real estate of his decedent and the sale was void, the heir of the deceased brought an action of ejectment against the grantee who asserted that conceding that the sale did not pass the title to the land to him, yet the deed was not void, but conveyed to him the possessory right of the administrator, and if the deed was void the heir could not maintain the action, for the right of possession was in the administrator until the settlement of the estate and the administrator alone could bring ejectment. The court, in its opinion, stated on this subject: "It is claimed that the statute which gives to the executor or administrator the right to the possession of the real estate, and the power to receive the rents, issues, and profits thereof, necessarily deprives the heir of such right of possession until such time as the estate is settled or delivered over to him by order of the court. But we think that no such result necessarily follows. As we understand the statute, it gives the personal representative the power to reduce the real estate to his actual possession should he think proper, or should the probate court direct him so to do, but it does not imperatively require him to take possession thereof, and until he does so the common right of the heir to the possession remains unimpaired." (See also *Holbrook v. Campau*, 22 Mich. 288; *Flood v. Pilgrim*, 32 Wis. 376; *Filbey v. Carrier*, 45 Wis. 469; *State v. Reeder*, 5 Neb. 203; *King v. Boyd*, 4 Ore. 326.)

The doctrine announced in *Marvin v. Schilling, supra, Streeter v. Paton*, and *Campau v. Campau* was quoted with approval in *Dundas v. Carson*, 27 Neb. 640.

In the case of *Balch v. Smith*, 30 Pac. Rep. [Wash.] 648,
which is cited by counsel for plaintiff in error as sustain-
ing his position and which does so, it is said: "Section
956, Code Proc., provides that the administrator may take
possession of the real estate of his intestate, and maintain
possession thereof, with the responsibility of ownership,
until the same shall have been delivered over by order of
the probate court.    And it is contended on the part of the
respondents that this shows clearly the intent on the part
of the legislature that, before the heir gets such title as
he can enforce in the courts, the property claimed by him
must have been so delivered over; and that the simple
fact of his heirship, without the aid of such adjudication
by the probate court, is not sufficient to authorize him to
maintain an action against an adverse holder;" and, after
stating that the courts of Dakota, Michigan, and other
states hold a doctrine directly contrary to the contention
of counsel, further says: "But we should feel constrained
to hold with these decisions were this section 956 the only
provision of our statute relating to this subject.    The
cases of which we have been speaking seem to have gone
off entirely upon the language of the section of the stat-
utes of the respective states corresponding to our section
956, and if they had other provisions similar to the suc-
ceeding sections of our probate practice act, to which
we shall now call attention, such fact seems to have
escaped the attention of the courts, and we assume that
these further provisions of our statute were not con-
tained in those under discussion when those cases were
decided.    Our section 956, as we have already seen, sim-
ply gives the administrator permission to take possession
of the real estate,—at least, it uses the word 'may' instead
of the word 'shall,' and in the light of the cases above
referred to, we should construe such language as they
have done, were it not for such further provisions of our
law."    The opinion announces the doctrine that title and
the rights incident thereto regularly pass to an heir only
by a decree of distribution of the court in which adminis-

tration proceedings are or have been pending. This was followed in the case of *Hazelton v. Bogardus*, 35 Pac. Rep. [Wash.] 602, but, as fully appears, the rule announced was based on the construction of the section of the statutes of Washington almost if not identical with ours in terms connectedly with others; the effect of the whole number so viewed forcing the conclusion. But there are no further provisions of our law which, read in connection with section 202, call into existence such conditions as confronted the Washington court; hence the opinions cited are not in point and the doctrines therein stated cannot be adopted or followed in the case at bar.

A second point discussed by the counsel for plaintiff in error is that the court erred in instructing the jury to the effect that the plaintiff in error had failed to produce evidence sufficient to establish a title by adverse possession. In regard to adverse possession and claim of title by reason thereof it has been several times announced by this court: "To establish title to real property in this state by virtue of the operation of the statute of limitations there must have been maintained by the party asserting it an actual, continuous, notorious, and adverse possession of the premises under claim of ownership during the full period required by the statute." In the opinion in the case of *Lantry v. Parker*, 37 Neb. 353, wherein the adverse possession of land was in question, it was said: "This evidence is, we think, sufficient to justify the trial court in finding that defendant had the notorious, continuous, and adverse possession of the land for the statutory period. The law does not require that possession shall be evidenced by a complete inclosure, nor by persons remaining continuously upon the land and constantly, from day to day, performing acts of ownership thereon. It is sufficient if the land is used continuously for the purposes to which it may be, in its nature, adapted." (See also *Twohig v. Leamer*, 48 Neb. 247.) Taking into consideration the facts that this land was quite hilly and rough, or what is commonly termed "broken

land;" that one portion of it was so sandy as to be used as a "sand pit," where persons procured sand for use in making mortar for plastering and other purposes; that not a great portion was arable land or fit for cultivation; also the conditions existent in this state during many of the years of plaintiff in error's alleged possession, relative to fencing, cultivation, and other of the well-defined and approved *indicia* of possession, and that many of them were not present where the possession was undoubted; also bearing in mind for what purpose this land was by nature adapted, we think the evidence adduced on the subject of the adverse possession of plaintiff in error was sufficient to demand that question be submitted under appropriate instructions to the jury for its consideration and determination, from which it follows that the court erred in giving the instruction it did, and the judgment must be reversed and the cause remanded.

REVERSED AND REMANDED.