EARL H. BURKET ET AL., APPELLEES, v. R. E. KRIMLOFSKI ET AL., APPELLANTS.

91 N. W. 2d 57

Filed July 3, 1958. No. 34395.

Roy I. *Anderson* and *Swarr, May, Royce, Smith, Andersen & Ross,* for appellants.

*Spier, Ellick & Spire,* for appellees.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

In this action plaintiffs seek a decree quieting title in them to certain accretion and reliction lands. The action was against defendants Krimlofski and all other persons having or claiming an interest in the lands involved.

Defendant R. E. Krimlofski answered claiming title by adverse possession to the land involved. He prayed for a decree quieting title in him.

The trial court rendered a decree for the plaintiffs. Defendants filed a motion for a new trial, in part on the ground of newly discovered evidence. A hearing was held on this motion. Defendants offered, and there were received in evidence, maps and aerial photographs.

The trial court denied the motion and defendants appeal. We reverse the judgment of the trial court and remand the cause with directions.

The cause is here for trial de novo. Both parties here

treat the exhibits, introduced on the motion for a new trial, as in evidence and each relies on them. The plaintiffs contend that they were not properly newly discovered evidence; that a hearing on that ground should not have been had; and that the exhibits should not have been admitted. Plaintiffs do not cross-appeal. We consider the exhibits as evidence for our consideration.

Defendants assign error in the refusal of the trial court to admit two photographs in evidence. Each was cumulative of other evidence in the record. It is not necessary to further consider the assignments.

Defendants further complain of error in admitting on cross-examination testimony of Mr. Krimlofski as to a conversation had with Mr. Burket obviously for the purpose of exploring the possibility of a settlement. The evidence possessed no controlling influence on the decision here made. This assignment will not be considered further in this opinion.

Without dispute plaintiffs in 1932 became the owners of a tract of land referred to as Tax Lot 5, lying west of the Missouri River with the east bank of the land described in the deed as "along the west bank of the Missouri River." The deed also described "And all accretions thereto." The evidence shows that there was then a county road along the west bank of the river and at that time was a few feet therefrom. Defendants contend that whatever accretions attached to the land attached to the county road and that they belong to the county and not the plaintiffs. There is no evidence in the record showing the title of the county to the roadway other than that which points toward an easement based on use. We do not consider the contention of controlling merit, and put it aside.

Defendants' claim of title rests on a claim of adverse possession to an island in the Missouri River. Defendants are husband and wife. This island first appeared as a sand bar in 1926. The evidence shows that they took

possession of this sand bar in 1926, planting willows on it and sinking anchor weights so as to dock boats on it. They built duckblinds on it and fished from it. By 1927 willows were growing on it. In a few years it became timbered with cottonwoods, willows, and underbrush. They then conceived the idea of making a wild life sanctuary of it. They put up "No Trespassing," "No Hunting," and similar signs. Whenever others came upon it they claimed ownership of it, ordered them off, and made their control effective. When others built hunting blinds on the island, they destroyed them. In later years they policed the property to put out and prevent fires. They granted permission to friends to use the island. At the time of the trial this island was heavily timbered, with trees going to a height of 40 to 50 feet in parts of it.

Without reciting the evidence in detail, we deem it sufficient to establish the existence of the island and adverse possession to it as such under the rules last stated in Worm v. Crowell, 165 Neb. 713, 87 N. W. 2d 384: The claim of title to land by adverse possession must be proved by actual, open, exclusive, and continuous possession under a claim of ownership for the statutory period of 10 years. The possession is sufficient if the land is used continuously for the purpose to which it may be in its nature adapted.

The established rule is: Title by prescription may be acquired to an island in a stream, which otherwise would belong to a riparian owner. Accretions to an island so held and occupied for more than the statutory period belong to the owner of the island, and not to the riparian owner to whom the island or a part of it would otherwise belong. Briard v. Hashberger, 107 Neb. 199, 185 N. W. 430. See Higgins v. Adelson, 131 Neb. 820, 270 N. W. 502.

We come then to the question of fact as to whether the accretion and reliction land involved here belongs to the defendants as owners of the island or to plaintiffs as owners of the mainland.

The land in dispute extends directly east from the plaintiffs' land.

Defendants contend that the island was originally in Iowa and now by compact between the states is in Nebraska. That situation does not enter into the decision here. Nor are we concerned with the question of the navigability of the Missouri River. The rule is: "* * * the rights of riparian owners upon the Missouri river to land formed by accretion are the same as if the river were not navigable, and * * * the common law applies in full force." Kinkead v. Turgeon, on rehearing, 74 Neb. 580, 109 N. W. 744, 121 Am. S. R. 740, 7 L. R. A. N. S. 316. See, also, Worm v. Crowell, *supra*.

The rules also are: Land uncovered by a gradual subsidence of water is not an accretion, but a reliction. The same law applies to both these forms of addition to real estate which are held to be the property of the abutting landowner. State v. Ecklund, 147 Neb. 508, 23 N. W. 2d 782. Accretion is the process of gradual and imperceptible addition of solid material, called alluvion, thus extending the shore line out by deposits made by contiguous water, or by reliction, the gradual withdrawal of the water from the land by the lowering of its surface level from any cause. Where by the process of accretion and reliction, the water of a river gradually recedes, changing the channel of the stream and leaving the land dry that was theretofore covered by water, such land belongs to the riparian owner. Ziemba v. Zeller, 165 Neb. 419, 86 N. W. 2d 190. Accordingly we will refer to the lands herein involved as accretion land without making an effort to determine where accretion ends and reliction begins.

Reference will be made to the work of the U. S. Army Engineers in controlling the Missouri River and its effect on the creation of the problem here presented. The rule as to that is: The fact that accretion is due, in whole or in part, to obstructions placed in the river by third parties does not prevent the riparian owner from

acquiring title thereto. Ziemba v. Zeller, *supra.*

We go now to the evidence as to the accretion involved.

We have referred above to the situation that the evidence shows existed in the river, in 1926 and following, showing the development of the island. The evidence is that in the early years the Missouri River had two channels, one on the Iowa side to the east of the island, and one on the Nebraska side touching within a few feet of the border of plaintiffs' land.

We discuss the exhibits chronologically. Exhibit 16 is a picture offered by defendants taken on the island in 1927 showing small willows growing thereon. This picture was excluded on the ground that it was not within the issues of the case. Parol evidence of that fact had been admitted. We deem its exclusion an obvious error and consider it here.

Exhibit 15 is a picture offered by defendants showing the existence of the island in the river, with water beyond to the east. This was taken from a point on the mainland to the immediate north of plaintiffs' land.

Exhibit 6 is an exhibit offered by plaintiffs. It is a map prepared by the U. S. Army Engineer's office in September 1930. This map shows a large island with the legend "willows" on it. The southern end lies to the east of plaintiffs' land. It shows the main channel of the river to the west of the island and touching the plaintiffs' land to the immediate east of the county road.

Exhibit 2 is a map offered by plaintiffs based on a survey made in 1931. It shows the Missouri River touching plaintiffs' land to the immediate east of the county road.

Exhibit 10 is a photograph taken in January 1935 and offered by plaintiffs. It shows the high bank of the river close to the road and ice in front where plaintiffs' son is skating.

Exhibit 9 is a picture taken in October 1935 offered by plaintiffs taken from a cabin site on a high point on their land. It is a picture looking down from an eleva-

·tion on the river bank. It shows the main channel of the river in the immediate foreground and the island beyond with trees growing upon it and water between the island and the Iowa mainland.

Exhibit 22 is a map offered by the defendants prepared by the U. S. Army Engineer's office on October 29, 1936. It shows a large island in the river east and north of the plaintiffs' land with an indication of sand bars accreted thereto extending down to and opposite plaintiffs' land. It shows the main channel of the river touching plaintiffs' land as before described. It also shows dike piling and revetments completed across the main channel some distance to the north. This fixes the first definite date of the commencement of control work by the U. S. Army Engineers.

Exhibit 23, offered by defendants, is a map prepared by the U. S. Army Engineer's office dated May 5, 1937. It shows additional dikes completed across the main channel of the river to the north. It shows the island as before but not as distinct as in the previous exhibit.

Exhibit 24 is a map offered by the defendants prepared by the U. S. Army Engineer's office dated October 21, 1938. It shows additional dikes and revetments completed across the former main channel of the river. It shows a larger island to the north but nothing directly to the east of plaintiffs' land. It shows a channel to the west of the island and touching plaintiffs' land as above described.

Exhibit 25 is a like map offered by defendants dated May 1, 1939. It shows the main channel to the east of the large area of land located where the island began.

Exhibit 26 is a like map offered by the defendants dated March 20, 1940. It shows the main channel of the river to the east of the island with the island extending down to and opposite plaintiffs' land with an open water area to the west of the island.

Exhibit 7 is a like map offered by the plaintiffs dated March 29, 1940. It shows a large island extending down

to and almost opposite plaintiffs' land with an open water area to the west.

Exhibit 27 is an aerial photograph offered by defendants taken August 15, 1941, by the U. S. Department of Agriculture. It shows the main channel of the river to the east of a large island that extends down to the east of plaintiffs' land and about half the distance of their eastern boundary. It shows an open channel from the north to the south running the full length of the island to its west. This is now described in the evidence as a chute. It shows definitely for the first time a narrow accretion area, wider at the south, attached to plaintiffs' land.

Exhibit 8 is a U. S. Army Engineer's map dated 1946-1947, offered by plaintiffs. It shows the main channel of the river fully established to the east of the land here involved. To the west is a solid area of land bearing the legend "willows." This extends for the full distance and beyond the boundaries of plaintiffs' land extended to the east. It shows the chute between this land and the mainland to the west.

Exhibit 28 is an aerial photograph offered by defendants taken by the U. S. Department of Agriculture dated July 31, 1949. This shows the island now extended downstream well beyond plaintiffs' land. It shows the main channel of the river to the east. It shows the channel of the chute, then largely dry land. It shows the accretion to plaintiffs' land, above mentioned, to the west of the chute channel, and vegetation growth both to the west and east of the chute channel.

In 1954 the defendants fenced in the land on the west side. The exact location of the fence is not determinable. The discovery of the fence by the plaintiffs seems to have precipitated this controversy.

Exhibit 29 is an aerial photograph offered by defendants taken by the U. S. Department of Agriculture on June 7, 1955. It shows the main channel of the river to the east of the area involved with vegetation-covered

land extending to the west to the road on plaintiffs' land. The old outline of the bed of the chute, then dry land as described by witnesses, is clearly visible with greater growth of vegetation on a narrow strip of land to the west attached to plaintiffs' land and to the east of the chute bed also.

Exhibit 18, a photograph offered by the defendants, taken in 1956, shows this vegetation to be trees of a substantial size.

The parol testimony supports the story shown by the exhibits. We will not extend it by the recital of it more than has been done.

It is clear that an island formed in the river, in 1926 and following, between the two large channels of the river. As recited herein defendants established title to the island by adverse possession. Beginning then, as a result of the work of the Army Engineers, the main channel of the river was consolidated and flowed to the east of the island. Accretions began to form on the island and over the years its boundaries were extended to the west and south by that process, leaving for a time a channel west of the island, herein referred to as the chute. Accretions began to form then to the east of plaintiffs' land to the west of the chute and these attached to plaintiffs' land. Finally as a result of reliction the chute also became dry land.

We conclude that the accretion land east of the chute attached to and became a part of the island in defendants' ownership. The accretion land to the west of the chute attached to and became a part of plaintiffs' land.

The Supreme Court of North Dakota recently stated the applicable rule for determining the dividing line, in Hogue v. Bourgois, — N. D. —, 71 N. W. 2d 47, 54 A. L. R. 2d 633, as follows: "* * * Where the accretion commences with the shore of the island and afterward extends to the mainland, or any distance short thereof, all the accretion belongs to the owner of the island; but, where accretions to the island and to the mainland

eventually meet, the owner of each owns the accretions to the line of contact."

In Roll v. Martin, 164 Neb. 133, 82 N. W. 2d 34, we found "no fault" with a contention that the owners of land were entitled to all accretions to the thread of the closed channel as a matter of right.

Accordingly we find that plaintiffs are entitled to a decree quieting title in them to the accretion land here involved attached to their land from its old bank, east to the thread of the chute channel as it existed before it became dry land by reliction as shown on exhibit 29.

The defendants are entitled to a decree quieting title in them to the accretion land here involved which attached to the island which lies generally east of the thread of the chute channel as shown by exhibit 29 as it existed before it became dry land by reliction.

The plaintiffs advance the contention here that defendants must prove adverse possession, not alone to the island, but also to the land attached thereto by accretion and reliction. Such a rule, of course, would nullify any rights resting on accretion or reliction. In Roll v. Martin, *supra*, we found no fault with the contention that one who owned an island was not required to take possession of accretion land in order to establish his claim thereto as a matter of right unless someone actually had established the right thereto by adverse possession. Plaintiffs' evidence falls short of proving adverse possession to the accretion land.

Plaintiffs further argue that one of the reasons for the riparian right rule is to assure the owner of riparian lands continued access to the water of a stream and accordingly he has the right to have his land follow the stream so as to preserve his riparian right of access to the water.

Plaintiffs rely on a statement found in City of St. Louis v. Rutz, 138 U. S. 226, 11 S. Ct. 337, 34 L. Ed. 941. That case in turn relies on Mulry v. Norton, 100 N. Y. 424. A reading of these cases reveals that the court was there

dealing with the rights of conterminous owners of mainland. The problem here presented does not seem to have been involved.

The rule is: Land, to be riparian, must have the stream flowing over it or along its border. Stratbucker v. Junge, 153 Neb. 885, 46 N. W. 2d 486.

The fact here is that plaintiffs' land, although once riparian, is no longer riparian and it does not now have those rights that once attached to the land.

A somewhat comparable case is that of Wholey v. Caldwell, 108 Cal. 95, 41 P. 31, 49 Am. S. R. 64, 30 L. R. A. 820. There land that was once riparian, by natural forces became nonriparian. The owner claiming riparian rights asserted the right to go upon the land of others and to restore the water to its former channel. The court held that when the flow was lost, the riparian rights were lost with it.

We find no merit in the contention.

The judgment of the trial court is reversed and the cause remanded with directions to render a judgment quieting title to each of the parties to the land involved as above indicated.

If the parties cannot agree as to the location of the common boundary line, then the court is directed to receive evidence limited to that issue and to determine the exact location by metes and bounds of the thread of the chute as it appears on exhibit 29 and to decree that such line is the boundary line.

REVERSED AND REMANDED WITH DIRECTIONS.

CARTER, J., participating on briefs.