JOHN JONES ET AL., APPELLANTS, V. HENRY SCHMIDT ET AL.,
APPELLEES.

102 N. W. 2d 640

Filed April 29, 1960.    No. 34727.

*Mark J. Ryan, Philip H. Robinson,* and *Clarence E. Haley,* for appellants.

*Max W. Goetz, Frederick M. Deutsch,* and *William I. Hagen,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action by John Jones, Lawine Casey, Leona

Adair, Lowell Jones, Margaret Day, Shirley Jones, and Ogar Jones, plaintiffs, against Henry Schmidt and Agnes Schmidt, defendants, to have quieted in them title to land in Cedar County, Nebraska, described as follows: "Commencing at the center of Section Thirteen (13) Township Thirty-three (33) Range One (1) East of the 6th P.M. in Cedar County, Nebraska, running thence East along the eastwest half section line of said Section 13-33-1E a distance of 2570 feet, thence due north a distance of 150 feet for the place of beginning. Running thence 1965 feet south 63 degrees east; thence 1375 feet south 19 degrees east, thence 1220 feet south 18 degrees east, thence 2135 feet south 38 degrees east, thence 645 feet south 18 degrees east, thence 810 feet south 4 degrees east, thence 159 feet south 54 degrees east; thence 695 feet south 67 degrees east, thence 955 feet south 61 degrees east, thence 775 feet south 59 degrees east, thence 156 feet north 26 degrees east, thence 1050 feet north 15 degrees west, thence 792 feet north 2 degrees east, thence 174 feet north 12 degrees east, thence 1420 feet north 22 degrees east, thence 920 feet north 10 degrees east, thence 955 feet north 27 degrees east, thence 996 feet north 12 degrees west, thence 1120 feet north 22 degrees west, thence 4400 feet north 25 degrees west, thence 2960 feet north 63 degrees west, thence 1570 feet north 75 degrees 30 minutes west, thence 470 feet south 18 degrees 30 minutes west, thence 4400 feet south 5 degrees west, thence 222 feet south 8 degrees west, thence 115 feet south 26 degrees west to the place of beginning, all in Cedar County, Nebraska." This description is based on a survey made in 1955. The basis of the action is claimed ownership of the land which they allege is accretion to Lot 1, Section 29, Township 33, Range 2 East in said Cedar County, Nebraska. This lot was in her lifetime the property of Margaret Jones. It descended to the heirs of Margaret Jones on her death, a part of which became the property of each of the plaintiffs by inheritance and a part

of which came to John Jones by purchase from other heirs.

After the action was filed the named defendants filed an answer and cross-petition. As to the answer nothing needs to be said except that there was a denial that the lands in question were accretion and also a denial that they belonged to the plaintiffs.

By the cross-petition the defendants made all persons having or claiming any interest in certain property parties to the action and had process duly issued and served. The description of the property in the cross-petition is as follows: "Commencing at the East Quarter Corner of Section Thirteen, Township Thirty-three North, Range One, East of the Sixth Principal Meridian in Cedar County, Nebraska, thence from the East-west center line of said Section Thirteen, an angle to the left of 86 degrees, 29 minutes, for 148.0 feet, to the point of beginning, a parcel of land bounded on the Southwest by a meander line described as follows: Commencing at the point of beginning, thence with an angle to the right, with a line between the East Quarter Corner and point of beginning, of 126 degrees, 23 minutes, for 693.6 feet, thence with an angle to the left of 34 degrees, 59 minutes, for 491.7 feet, thence with an angle to the right of 16 degrees, 35 minutes, for 473.0 feet, thence with an angle to the right of 27 degrees, 54 minutes, for 401.8 feet, thence with an angle to the right of 21 degrees, 05 minutes, for 322.4 feet, thence with an angle to the left of 4 degrees, 25 minutes, for 644.5 feet, thence with an angle to the right of 13 degrees, 59 minutes, for 1564.8 feet, thence with an angle to the left of 29 degrees 39 minutes, for 1004.3 feet, thence with an angle to the right of 5 degrees, 19 minutes, for 1241.2 feet, thence with an angle to the right of 21 degrees, 52 minutes, for 798.0 feet, thence with an angle to the right of 18 degrees, 43 minutes, for 536.7 feet, thence with an angle to the left of 63 degrees, 39 minutes, for 290.7 feet, thence with an angle to the left of 3 degrees,

41 minutes, for 691.2 feet, thence with an angle to the right of 1 degree, 25 minutes, for 959.3 feet, thence with an angle to the right of 11 degrees, 06 minutes for 806.4 feet, thence with an angle to the left of 107 degrees, 20 minutes, for 222.0 feet, to the high bank of the Missouri River, bounded on the west by a meander line described as follows: From the point of beginning, thence with an angle to the right, with a line between the point of beginning and the East Quarter Corner of Section Thirteen, of 23 degrees, 38 minutes, for 106.1 feet, thence with an angle to the left of 21 degrees, 38 minutes, for 342.9 feet, thence with an angle to the left of 1 degree, 15 minutes for 1522.0 feet, thence with an angle to the left of 0 degrees, 19 minutes, for 1182.0 feet, thence with an angle to the right of 0 degrees, 27 minutes for 1109.8 feet, thence with an angle to the left of 0 degrees, 19 minutes, for 490.15 feet, thence with an angle to the right of 13 degrees, 15 minutes, for 443.15 feet, to the high bank of the Missouri River, bounded on the north and East by the Missouri River." This description is purportedly and without dispute based on a survey made in 1958. There is a slight error. Where 401.8 feet appears should appear 410.8 feet. The error is of no real significance. The land area described in the petition is not identical with that described in the answer and cross-petition but the former is included within the latter, hence in the light of the disposition made of the issues by this opinion a description of the variance does not become important.

The purpose of the cross-action was to have title quieted in the defendant Henry Schmidt on the basis of adverse possession. The defendants Henry Schmidt and Agnes Schmidt pleaded that the defendant Henry Schmidt was the owner of the land and that he had been in open, notorious, exclusive, adverse, and continuous possession thereof under color of title and claim of ownership for more than 10 years before the commencement of the action.

The plaintiffs generally denied the allegations of the answer and cross-petition.

The action was tried to the court and a decree was rendered wherein title was quieted to the land in Henry Schmidt against Agnes Schmidt, each of the plaintiffs, and all of the parties who were made defendants pursuant to the filing of the cross-petition. From the decree the plaintiffs have appealed. None of the additional parties have appealed.

From this it becomes apparent that the questions before the court are those of whether or not the plaintiffs are entitled to prevail on the ground that they are owners of these lands as accretion to Lot 1, Section 29, Township 33, Range 2 East, Cedar County, Nebraska, or whether or not Henry Schmidt is the owner by reason of adverse possession. It is not disputed that the plaintiffs are the owners of the original Lot 1.

In Stratbucker v. Junge, 153 Neb. 885, 46 N. W. 2d 486, it was said: "Plaintiff in an action to quiet title has the burden of proof and he must recover upon the strength of his title and not because of any weakness in the title of his adversary." This pronouncement was made with reference to the question of whether or not there was a sufficiency of proof of accretion. From this it becomes clear one claiming that land is accretion has the burden of so proving by a preponderance of the evidence in an action to quiet title to the land. See, also, Stull v. Goold, 96 Neb. 263, 147 N. W. 468; Durfee v. Keiffer, 168 Neb. 272, 95 N. W. 2d 618.

It becomes necessary therefore to examine the evidence and therefrom ascertain whether or not the plaintiffs have sustained the burden of proving that this land is accretion to Lot 1.

It is pointed out here that the original Lot 1 is a narrow strip of land lying along the east line of Section 29, Township 33, Range 2. It does not extend either to the north or to the south line of the section. Its length is north and south and its width is east and west. Lot 1

was originally the western end of St. Helena Island, an island in the Missouri River. The Missouri River in this area comes down generally from the northwest and extends to the east and southeast. At one time in this area the river had two channels, one of which passed to the north of St. Helena Island and the other to the south. In an area which extended upward or westward and northwestward the river channels, in the course of nature, moved about in such manner as to interfere with and at times destroy surface structures of land and to bring into being others. Some of the new structures came into being with suddenness, and others imperceptibly by addition over long periods of time to other structures or by the lowering of the level of the water boundary. In the case here the concern, to the extent it is related to plaintiffs' cause of action, is with the latter, or what is termed accretion.

"Accretion is the process of gradual and imperceptible addition of solid material, called alluvion, thus extending the shore line out by deposits made by contiguous water, or by reliction, the gradual withdrawal of the water from the land by the lowering of its surface level from any cause." Burket v. Krimlofski, 167 Neb. 45, 91 N. W. 2d 57. See, also, Durfee v. Keiffer, *supra.*

Extending westward for about a mile from Lot 1 is an area or strip of land the width of which is not clearly disclosed. The direction of extension is somewhat northwest but since the general direction is westward, west will be employed for convenience. This extension is upstream of the Missouri River. At the upper end of this area the strip narrows for an uncertain distance. This narrower area is referred to in the evidence as the neck. The width of this neck is not certain but there is evidence that the distance across it in 1936 was $\frac{1}{4}$ mile or more, in 1955 about 156 feet, and in 1958 about 222 feet. Above the neck the land area becomes wider until a width of approximately one and one-half sections of land is reached.

Title to the land extending from Lot 1 to the indicated location about 1 mile west is not in issue in this case. The plaintiffs however contend that this strip of land together with the land to the west thereof and generally described by boundaries as follows is accretion to Lot 1 and that accordingly and on that ground they are entitled to have title thereto quieted in them: The northern boundary starts in section 20 about ¼ mile east of the southwest corner of section 20 and a short distance north of the south line of section 20. (This is about 1 mile northwest of the west end of Lot 1.) From there it follows the high bank of the river generally northward to the north line of section 20, thence north and a little bit east across about the south half of section 17, thence in a general northwesterly direction to a point slightly north of the east and west half-section line of section 7 and about 250 feet east of the township line which forms the west boundary of sections 7, 18, 19, and 30, thence south to a point about 150 feet north of the east and west half section line of section 18, thence in a meandering course but generally in a southeasterly direction to the point of beginning of this description.

It is pointed out again that this description is of land which falls within the description contained in the petition of the plaintiffs and also the description contained in the answer and cross-petition of the defendants.

It perhaps should also be pointed out that the reason for the use of approximations as to distances and locations is that the evidence is not in such condition as to permit, in these areas, a greater degree of certainty.

The right of the plaintiffs to prevail in their action depends upon whether or not they have sustained their burden of proving that the lands in dispute are accretion to Lot 1. This burden required proof that the first mile west was accretion and that the land on to the west was built up by a continuation of the accretion process.

The record discloses that title to Lot 1 was obtained

by William C. Jones in April 1895; that it was transferred by him by deed to Margaret Jones, his wife, in October 1908; that William C. Jones died in November 1913; that Margaret Jones died in February 1935; and that the deed from William C. Jones to Margaret Jones was recorded in August 1936. Without going into further detail it is made to appear, and no one disputes it, that the plaintiffs are the owners of Lot 1 and the accretion, if any, thereto by inheritance and by purchase under an unbroken chain of title extending back to the year 1895.

To prove the cause of action of plaintiffs, seven witnesses were called. Two of these were the plaintiff John Jones and his brother, Joseph Jones. Their ages were respectively 64 and 66 years at the time of the trial. Neither of these witnesses gave any factual testimony as to observations over the years which demonstrated or from which a reasonable inference could flow that the lands in question could be accretion to Lot 1. No other witness gave any such testimony. It is true that witnesses testified as to some topographical conditions and relative variations in the water elevation at different times, but none of this bears a probative relation to accretion.

It is pointed out that the plaintiffs did not call as a witness any surveyor or engineer, and on this account there was no opinion based upon engineering examination and analysis that the land involved here was accretion to Lot 1.

There was a total failure of proof on the part of plaintiffs that the land to which they seek to have title quieted in them was accretion to Lot 1. It follows that for this failure of proof the relief sought by the plaintiffs must be denied.

This failure of proof is sufficient to deny the plaintiffs any relief, but it appears proper to say that competent evidence of the defendants, which is not contradicted by anything else of probative value in the

record, appears to characterize the land in question, if it is in fact in whole or in part accretion, as accretion to land above and not to land below. There was no effort to delineate with certainty what had taken place over the years in the area above, but it was made clear that the westermost line of the area involved was a line between this and other land farther west to which it was attached of which it was an eastern continuation. Whether or not this land to the west at the time on which the testimony of the witness is based was in the nature of a portion of an island does not clearly appear. The same is true of the land involved here. Insofar as the plaintiffs' cause of action is concerned it is of no controlling importance, since as has been indicated if the plaintiffs are to recover they must do so on proof of accretion to Lot 1 and not on any weakness in the title of another. This supports the conclusion already arrived at that the plaintiffs may not be allowed to recover on their pleaded cause of action.

We come now to a consideration of the question of whether or not the defendants or either of them are entitled to have title quieted in them to the land area described in their answer and cross-petition on the ground of adverse possession.

A party, in order to establish title to real property by the operation of the statute of limitations, or in other words by adverse possession, must prove that he has been in actual, continuous, notorious, and adverse possession of the property under claim of ownership during the full period required by the statute. See, Lewon v. Heath, 53 Neb. 707, 74 N. W. 274; Worm v. Crowell, 165 Neb. 713, 87 N. W. 2d 384; Burket v. Krimlofski, *supra*.

In order to establish title by adverse possession it is not necessary that a party shall prove a complete enclosure nor that he remained continuously on the land for the statutory period, but only that the land was used continuously for the purposes to which it was by its

nature adapted. See, Lantry v. Parker, 37 Neb. 353, 55 N. W. 962; Lewon v. Heath, *supra;* Walker v. Bell, 154 Neb. 221, 47 N. W. 2d 504; James v. McNair, 164 Neb. 1, 81 N. W. 2d 813; Thomas v. Flynn, 169 Neb. 458, 100 N. W. 2d 37.

The statutory period for the establishment of title to real estate by adverse possession is 10 years. See, § 25-202, R. R. S. 1943; Ellsworth Corporation v. Stratbucker, 134 Neb. 246, 278 N. W. 381.

It is pointed out here that the defendant Agnes Schmidt makes no claim of any interest in this land in her own right. She is the wife of Henry Schmidt. For the further purposes of this opinion Henry Schmidt will be referred to as the defendant unless there is a departure with attention called to it.

The defendant testified that in 1927 he went on and used for pasture the described land at the upper or west end or immediately east of the township line to which reference has been made herein; that at that time the land area extended about ½ mile eastward and was bounded on the east by water which extended north and south and entirely surrounded the area occupied at that time; that thereafter the land built out and up from the northwest to the southeast and to the north until the entire area described in the answer and cross-petition had been built up; that, without going into great detail but in summary, as it built up he used, occupied, and claimed it as his own; that he used the area for pasture and on it he cleared different areas which he used for the production of crops; that the area thus used, occupied, and claimed was built up at least as early as 1942; and that at no time theretofore or since has he abandoned, surrendered, or released his possession, occupancy, or claim of title to this area.

The testimony of the defendant with regard to possession, use, and occupancy of this land is corroborated by the testimony of other witnesses.

This evidence of possession, use, and occupancy stands

without substantial refutation. There is however some testimony to the effect that the defendant was not occupying the land under claim of ownership but under an oral agreement made with him on behalf of the heirs of William C. Jones or of Margaret Jones for the years 1931 and 1932 by Joseph Jones, a son of William C. and Margaret Jones, and thereafter by John Jones, one of the plaintiffs. The evidence in this connection is that there was no arrangement for rental, but only that there was bare permission given to the defendant to use the land without any reasonably informative evidence as to when or where these incidents took place. This evidence relative to purported agreements was denied by the defendant.

On its face, in the light of the uncertainty and the manner in which this evidence appears, it must be concluded, as undoubtedly the trial court did conclude, that this may not be regarded as credible. In this connection it is pointed out that none of the plaintiffs or their predecessors in interest in Lot 1 ever did or attempted to put to use any of the land claimed by the defendant.

There is evidence that in 1953 the plaintiff John Jones requested a lease upon this land from the defendant or to have the defendant pay $10 or $15 as rental for the land.

The defendant refused to sign the proffered lease or to comply with the request for payment of rent.

There is no evidence of probative value that anyone ever attempted to oust the defendant from possession of the land until August 1953. In August 1953, the plaintiff John Jones requested him to deliver possession on March 1, 1954. There was no compliance with this request. Notice to quit was served in September 1955. Thereafter the plaintiff John Jones instituted forcible entry and detainer proceedings against the defendant to obtain possession of the land. A defense to the action was that the defendant was the owner. The fact that there was resistance in that instance is disclosed

by the opinion in Jones v. Schmidt, 163 Neb. 508, 80 N. W. 2d 289. The record discloses that in each and every instance where there was an effort to oust the defendant from possession of the land in whole or in part there was resistance which was successful.

From the entire record it becomes apparent that within the meaning of the law the defendant possessed and occupied this land under such conditions and for a sufficient period of time as to cause the title thereto to vest in him.

The judgment of the district court is therefore affirmed.

AFFIRMED.