### COMMISSIONERS OF LAND OFFICE OF STATE OF OKLAHOMA et al. v. UNITED STATES et al.

(Circuit Court of Appeals, Eighth Circuit. December 14, 1920.)

No. 5435.

**1. Indians ☞10—Island included in conveyance to tribe.**

Act June 5, 1872, and the deed of the Cherokee Nation executed pursuant thereto June 14, 1883, conveying to the Osage Tribe lands bounded on the south and west by the main channel of the Arkansas river, *held* to have conveyed title to an island lying north of what was then the main channel of the river, and which was afterward allotted by the land department to one of the Osage Tribe.

**2. Navigable waters ☞44 (1)—Change in main channel of river to opposite side of island does not move boundary.**

Where a river changes its main channel, not by excavating, passing over, and then filling the intervening place between its old and its new main channel, but by flowing around this intervening land, as by gradually during many years or by occasional floods deepening or enlarging a smaller channel on the other side of an island until it carries the greater part of its waters and becomes the main channel, a boundary which was fixed as the main channel remains in the old channel, subject to such changes in that channel as are wrought by erosion or accretion while it remains a running stream.

Appeal from the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Suit in equity by the United States and others against the Commissioners of the Land Office of the State of Oklahoma and others. Decree for complainants, and defendants appeal. Affirmed.

For opinion below, see United States v. Hutchings, 252 Fed. 841.

W. A. Ledbetter and John H. Miley, both of Oklahoma City, Okl., (S. P. Freeling, Atty. Gen., and H. L. Stuart, R. R. Bell, and E. P. Ledbetter, all of Oklahoma City, Okl., on the brief), for appellants.

Frederick B. Owen, of Oklahoma City, Okl. (Henry E. Asp, Henry G. Snyder, and Walter A. Lybrand, all of Oklahoma City, Okl., on the brief), for riparian owners, Edminston, Thomas, and Mullendore.

Paul Pinson, Sp. Asst. Atty. Gen. (Herbert M. Peck, U. S. Atty., of Oklahoma City, Okl., on the brief), for appellee United States.

Before SANBORN and CARLAND, Circuit Judges, and MUNGER, District Judge.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

SANBORN, Circuit Judge. Lot 7 in section 25, township 21 north of range 8 east of Indian meridian, and lot 11 in section 30, township 21 north of range 9 east of the Indian meridian, consist of an island in the Arkansas river above the mouth of Grand river, and lay north of the main channel of that river on June 5, 1872, when the United States by the act of Congress of that date conveyed and confirmed to the Osage Tribe of Indians its lands in what is now the state of Oklahoma, and bounded them on the south by "the north line of the Creek country and the main channel of the Arkansas river for a southern and western boundary." 17 Stat. 228, 229. These lots 7 and 11 were subsequently allotted to Larry Nolegs, a member of the Osage Tribe, in accordance with the provisions of the Osage Allotment Act of June 28, 1906 (34 Stat. §§ 3, 4, pp. 542, 543, 544), so that the United States thereby became the trustee of the oil and gas in the lands so granted to the Osage Tribe and the guardian of the allottee Nolegs and of his title to his allotment. As such trustee and guardian it brought this suit to quiet the title to the oil and gas in this island as trustee for the tribe and as trustee and guardian of Nolegs to quiet the title in the land in him, and to enjoin the defendants below, the appellants here, from interfering therewith. The court below granted the relief prayed for by the United States. The defendants who have appealed from its decree are the Commissioners of the Land Office of the State of Oklahoma, its Attorney General, and its lessee, who claim that the Arkansas river was and is navigable at the location of the island, and that the title to the bed of the river and the island vested in the state of Oklahoma when that state was admitted into the Union. The other appellants claim title to the island as grantees through mesne conveyances under the customary patents of the United States to the lands opposite the island on the south and west bank of the river.

This case and the case of Brewer-Elliott Oil & Gas Co. et al. v. United States et al., 270 Fed. 100, in which the opinion is filed herewith, were heard and decided below and in this court together upon all the arguments and evidence as well as the briefs in both cases. For the reasons stated in the case of Brewer-Elliott Oil & Gas Company the claim of the state of Oklahoma and its officers to any interest in or title to this island and to a reversal of the decree herein cannot be sustained, and as against them that decree must be affirmed on the authority of the decision in that case.

The other appellants are Thomas, Edminston, and Mullendore. Thomas and Edminston owned the lands on the south bank of the river opposite the island and claimed the island as an accretion to their lands. Mullendore claims under an oil lease from Thomas.

[1] The counsel for these appellants write in their briefs that they "complain only of that part of the court's findings of fact and judgment rendered thereon wherein the trial court found that the so-called island was included in the lands granted to the Osage Tribe by the act of June 5, 1872 (17 Stat. 228). This immediate finding was the result of the court's conclusion that the main channel of the Arkansas river was in 1872 south of the so-called island instead of north where admittedly it now is. They argue that the island was not included in

the tract conveyed and confirmed to the Osage Tribe: (1) Because it was not specifically described by government lot, section, or township in the deed of the Cherokee Nation to the United States in trust for the Osage Tribe dated June 14, 1883, which was made in execution of the act of June 5, 1872, and of the treaties between the United States and the Cherokee Nation, and the United States and the Osage Tribe, but that deed conveys the lands by townships and fractional townships and recites "the fractional townships being on the left bank of the Arkansas river"; (2) because no island was shown at the place of the island in question on the plat which accompanied the deed and was made a part thereof; and (3) because the deed specifies the number of acres conveyed by it, and this number is the number of acres in the townships and fractional townships specifically named therein, and does not include the number of acres in the island. But a careful review of the evidence leaves no doubt that in 1872, when the grant of that year was made to the Osage Tribe, there were two channels of the river, one on the north and one on the south of this island, and the channel on the south side was larger and deeper than that on the north side and was the main channel of the river. The act of Congress fixes the boundary at the place of the location of the island in question at "the main channel of the Arkansas river." The deed of the Cherokee Nation of 1883, which was made in performance of the grant of 1872, as the court below well said, citing Jones v. Meehan, 175 U. S. 1, 8, 10, 21, 20 Sup. Ct. 1, 44 L. Ed. 49, Francis v. Francis, 203 U. S. 233, 238, 239, 27 Sup. Ct. 129, 51 L. Ed. 165, and Chase v. United States, 222 Fed. 593, 597, 138 C. C. A. 117, 121, could not and did not revoke this grant or any part of it. The question in every case is what intention of the parties the terms of the treaty and their grants indicated. 175 U. S. 10, 20 Sup. Ct. 1, 44 L. Ed. 49.

While no island is shown on the plat which is a part of the deed, that plat bears this declaration:

"The islands in the Arkansas river opposite to the lands described in the foregoing, except Beaver and Turkey Island in township 23 N. R. 3 E. are a part and parcel of the land set apart for the Osage and Kansas Indians and covered and embraced in this plat and the foregoing deed of conveyance."

And the island here in controversy was opposite to the lands described in this deed and was neither Beaver nor Turkey Island.

The fact that the number of acres stated in the deed was not large enough to include the acreage of the island is far from sufficient to overcome the convincing evidence that the intention of the United States, of the Cherokee Nation, and of the Osage Tribe was to fix, and that they did fix, the southern and western boundary of the grant to the Osage Tribe at the location of this island at the middle thread of the channel south of the island, which is borne in upon our minds by the facts that the main channel in 1872 was the channel south of the island, that the grant is expressly bounded, by the act of 1872, by the main channel of the river, that the notation on the plat in effect declares that this island was within the grant, and that the Commissioners of the Land Office and the Secretary of the Interior, by including this

island in the lands of the Osage Tribe and allotting it to Nolegs, have made known that this was their opinion, so that it is clear that the court below made no mistake in its finding that the boundary of the grant to the Osage Tribe by the act of 1872 was the thread of the channel of the river south of the island which was then the main channel of that river.

[2] Counsel, however, contend that, even if the southwest boundary of the lands of the Osage Tribe at the point in question was the thread of the south channel in the year 1872, that boundary has now become the thread of the north channel because the latter channel is now the main channel of the river, and the old south channel, except in very high water, consists of beds of dry sand with occasional water holes which now lie between the island as it was in 1872 and the lands of Thomas and Edminston on the southwest bank of the river and make their lands on that bank, the filled bed of the south channel, and the island one continuous tract of land, all of which north and east of their lands on the old south bank of the south channel they claim as accretions to those lands. They invoke the familiar rule that the land which by gradual and natural accretion attaches itself to the bank of a river or of an island therein becomes the property of the owner of that bank, and contend that by this process the land in the filled south channel and on the island has become theirs. They concede that, if the southwest boundary of the land of the Osage Tribe was the south channel of the river, as we have found that it was, the middle thread of that channel was the original boundary between their lands and the plaintiff's island, but they insist that this boundary line has been transferred to the thread of the north channel of the river by the fact that by the gradual filling of the south channel and the gradual diversion of the waters of the river to the north channel during the 40 and more years since 1872 that has become the main channel of the river.

The general rule on this subject is: (1) That where the thread of the main channel of the river is the boundary between two estates and it changes by the slow and natural processes of accretion and reliction, the boundary follows the channel; (2) but, where it changes by the sudden and violent process of avulsion, the boundary remains where the main channel was at the time of the avulsion, subject always to such changes as may be wrought after the avulsion by accretion or erosion while the old channel is occupied by a running stream. Counsel rely upon the first clause of this rule. That clause is applicable to and governs cases where the boundary line, the thread of the stream, by the slow and gradual processes of erosion and accretion creeps across the intervening space between its old and its new location. To this rule, however, there is a well-established and rational exception. It is that, where a river changes its main channel, not by excavating, passing over, and then filling the intervening place between its old and its new main channel, but by flowing around this intervening land, which never becomes in the meantime its main channel, and the change from the old to the new main channel is wrought during many years by the gradual or occasional increase from year to year of the proportion of the waters of the river passing over the course which eventually be-

comes the new main channel, and the decrease from year to year of the proportion of its waters passing through the old main channel until the greater part of its waters flow through the new main channel, the boundary line between the estates remains in the old channel subject to such changes in that channel as are wrought by erosion or accretion while the water in it remains a running stream. Davis v. Anderson Tully Lumber Co., 252 Fed. 681, 683, 164 C. C. A. 521, 523; Farnham on Waters & Water Rights, p. 2500; Hahn v. Dawson et al., 134 Mo. 581, 591, 36 S. W. 233; City of Victoria v. Schott, 9 Tex. Civ. App. 332, 29 S. W. 681, 687; Glassell et al. v. Ross Hansen et al., 135 Cal. 547, 67 Pac. 964; Indiana v. Kentucky, 136 U. S. 479, 509, 10 Sup. Ct. 1051, 34 L. Ed. 329; Missouri v. Kentucky, 11 Wall. 395, 408, 20 L. Ed. 116; Washington v. Oregon, 211 U. S. 127, 135, 29 Sup. Ct. 47, 53 L. Ed. 118. The evidence in this case has convinced that it falls under this exception: The main channel of the river never gradually crept over the intervening space occupied by the island, but from 1872 to the present time it was on either one side or the other of this island. The main channel passed from the south side of the island to its north side by the swinging during many years of the waters of the river from side to side of that stream, by the gradual increase during many years of the proportion of its waters flowing through the north channel and the gradual decrease of the proportion of its waters flowing through the south channel until the north channel became the main channel and the south channel was gradually filled. The island never became an accretion to the lands of the owners of the south bank of the river, and the decree below must be, and it is, affirmed.