FRANK MERCURIO, APPELLEE, V. CALVIN DUNCAN ET AL., APPELLANTS.

FILED NOVEMBER 27, 1936. No. 29738.

*Joseph C. Reavis, John C. Mullen* and *James E. Leyda,* for appellants.

*Benjamin S. Baker, F. A. Hebenstreit* and *Edward Shafton, contra.*

Heard before GOSS, C. J., GOOD, EBERLY, DAY, PAINE and CARTER, JJ., and MUNDAY, District Judge.

MUNDAY, District Judge.

For cause of action plaintiff alleges in his petition that he is the owner of section 22, township 3, range 17, in Richardson county, Nebraska, and all of the accretions extending east from this real estate to the west bank of the Missouri river, and that the defendants claim some interest therein adverse to the plaintiff's ownership.

Plaintiff asks that this claim of the defendants be declared null and void and plaintiff's title quieted against the same.

There were several answers of different defendants, but

only one was contested. This answer admits that plaintiff is the owner of said section 22, in Richardson county, Nebraska, but alleges that the defendants own and occupy certain land extending east from said section 22, and that the land owned by them lies east of and beyond the east boundary of Richardson county, and that said land, so claimed by them, is not within the territorial jurisdiction of the trial court. The answer also alleges that the Missouri river is the state boundary between the land of the plaintiff and the defendants; that in the spring of 1915 an ice gorge formed north of the land in question and that the river then changed its course by avulsion, and ever since that date has been flowing along the east side of defendants' land; that there are no accretions to the land of plaintiff; and denies generally the other allegations of the petition. The reply is a general denial.

From a decree quieting title in all the disputed land in the plaintiff, the defendants have appealed.

Thus, the issue is whether or not the land east of section 22 was formed by the Missouri river by accretion by a gradual receding to the east of this river, or whether there was a sudden change in the river's channel that was an avulsion. If the land east of section 22 was formed by accretion, the judgment of the trial court is correct. If there was an avulsion of the Missouri river, it is not. However, there is a question, as to evidence, that will be considered later.

The determination of this appeal and the rights of the parties are in the main questions of fact. The law is clear and well settled in this state on the question of law involved in this action.

1 C. J. 730, defines accretion as: "A gradual increase of land by imperceptible degrees; the gradual and imperceptible accumulation of land; the imperceptible accumulation of land by natural causes; the increase or growth of property by external accessions, as by alluvium naturally added to land situated on the bank of a river or on the seashore; the increase of real estate by the addition of portions of

soil by gradual deposit through the operation of natural causes to that already in the possession of the owner; portions of soil added to that already in the possession of the owner by gradual deposit." See, also, *Gill v. Lydick,* 40 Neb. 508, 59 N. W. 104.

An avulsion has been defined in 6 C. J. 876: "The sudden and rapid change of the channel of the stream which is the boundary, whereby it abandons its old and seeks a new bed." See *Nebraska v. Iowa,* 143 U. S. 359; *Bouvier v. Stricklett,* 40 Neb. 792, 59 N. W. 550.

The results of the two processes are quite different. In accretion the riparian owner's boundary still remains the stream, while in avulsion where a new bed is suddenly formed there is no change of the boundary.

The case of *Nebraska v. Iowa, supra,* states the law in this regard applicable to this case. The third paragraph of the syllabus in 36 L. Ed. 186, is: "Where the boundaries between states or nations are, by prescription or treaty, found in running water, accretion, no matter to which side it adds ground, leaves the boundary still the center of the channel. Avulsion has no effect on boundary, but leaves it in the center of the old channel."

A careful study of the record discloses that there was an ice gorge in the Missouri river in 1915 north of said section 22 near section 10 of the same township. So far there is no dispute; but as to what happened to the channel of the Missouri river at the time of this ice gorge in 1915 at section 10, there is much dispute and variance between the testimony of the witnesses.

It seems clear that at one time the Missouri river flowed from the north from near section 10 to the south, with its channel near the center of section 22, and that at the time of the trial the river flowed east from section 10 and south and a considerable distance east of the old channel in section 22.

Some of appellants' witnesses stated that the east bank of the old channel was visible at the time of the trial, and that at the time of the ice gorge the channel of the Missouri

river was suddenly changed to the east and extended south and southwest, and that the river did not again enter the original channel until near section 27, south of section 22; that there was no land formed by accretion on the west bank of the Missouri river after the ice gorge disappeared. It seems that there is a high water chute leading from the present channel of the Missouri river at about section 10 to down near section 22 and in which there was much water at times, when the Missouri river is flooded.

But the evidence is by no means clear that this high water chute was the original channel of the Missouri river near the time of the ice gorge in 1915, nor that the channel of the Missouri river, at or near that time, suddenly changed to the east.

Plaintiff had many apparently reliable witnesses, who had lived in that community near sections 10 and 22 for many years, who testified that the Missouri river after the ice gorge went back to its original channel and continued to run by section 22 as it had before the ice gorge, and that since the ice gorge the river slowly and gradually moved to the east, leaving the land adjoining section 22 on the east, which land is now in dispute. None of these witnesses are impeached and their testimony seems to stand under cross-examination. Even some of the appellants' witnesses stated that the river after the ice gorge gradually moved to the east. From our study of the entire record, we believe the trial court was right in holding that the land in dispute was accreted land of the Missouri river. The trial court had all the witnesses before it and could better know and determine the truth and as to whether or not any of the witnesses was mistaken. We can see no useful purpose in further reviewing or setting out the evidence in this opinion.

Complaint is made by the appellants that the trial court would not permit them to show the size of certain trees on Clark island. The place where these trees were situated was some distance northeast of the land in controversy. This evidence was immaterial and there was no prejudicial error in its exclusion.

The appellants also contend that the title to an excessive amount of land was quieted in the plaintiff and which was more than the evidence justified. We do not think so. The court found that the land adjoining a part of section 22 on the east was formed by accretion and correctly quieted title to the same in the plaintiff.

Although none of the defendants claimed title to any of the land in controversy, and were mere squatters, still the burden of proof, was on the plaintiff to prove by a preponderance of the evidence all the material allegations of his petition. We think he has so established his case.

We find no error in the record, and the judgment of the district court is

AFFIRMED.