DEE VALDER, APPELLEE AND CROSS-APPELLANT, V. SARAH
K. WALLIS ET AL., APPELLANTS AND CROSS-APPELLEES.

242 N. W. 2d 112

Filed May 26, 1976. No. 40201.

Robert C. Fisk of Finlayson, McKie & Fisk and Joseph R. Moore, for appellants.

Robert G. Scoville of Ryan, Scoville & Uhlir, and David S. Lathrop of Lathrop, Albracht & Dolan, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, and CLINTON, JJ.

NEWTON, J.

This is an action to quiet title to accretion lands formed by the Missouri River. At the time of the Iowa-Nebraska Boundary Compact of 1943 the land was in Nebraska. By virtue of a shift in the bed of the river, the land, although on the Nebraska side of the boundary line, is on the Iowa side of the river. The defendants own land in Iowa adjoining the property in dispute and claim ownership by adverse possession and accretion. The court decreed a division of the land in accordance with an existing river chute. Defendants appeal. We affirm the judgment of the District Court.

The law of Iowa regarding accretion lands has not been pleaded nor proved and our decision herein will be based on the laws of Nebraska.

The following facts appear to be clearly established by the evidence. In the early 1940's the Missouri River abutted the land of defendants in the State of Iowa. In the ensuing years the river moved westward and crossed to the Nebraska side of the state line fixed by the Iowa-Nebraska Boundary Compact of 1943. See Appendix, Vol. 2A, R. R. S. 1943. In moving westward it left an island protected by dikes constructed by the United States Army Corps of Engineers on the original Nebraska bank. Accretion formed downstream from this original island and dike and a substantial chute was left on the Iowa side of the island. Additional accretion formed on the Iowa bank to the east of this chute. The land in dispute comprises a part of the large island

which formed below the original dike and the small island. The chute carried a substantial volume of water sufficient for a 58-foot work boat to navigate it until dikes were constructed across it in the early months of 1961. Although defendants base their claim on adverse possession by reason of pasturing the island prior to 1961 and so testified, the evidence clearly establishes that the island was unfenced and not pastured prior to that time. This action was commenced in July 1970. Defendants have not established their claim to the island by reason of adverse possession.

The land in dispute is in Burt County, Nebraska, although on the present Iowa side of the river. Plaintiff seeks also to claim the land lying between the chute and the original Iowa bank as accretion to the original small island formed by avulsion. It is therefore apparent that in addition to the defendants' claim of adverse possession, we have conflicting accretion claims as defendants also assert that the land is accretion to their Iowa property. The evidence clearly and without contradiction establishes that defendants did obtain title to the land east of the chute by adverse possession. Have they established title by accretion to the land west of the chute which formed as part of the island? This presents a question of law.

" 'Avulsion' is a sudden and perceptible loss or addition to land by the action of water, or a sudden change in the bed or course of a stream." 78 Am. Jur. 2d, Waters, § 406, p. 852. See, also, Ziemba v. Zeller, 165 Neb. 419, 86 N. W. 2d 190; Mercurio v. Duncan, 131 Neb. 767, 269 N. W. 901.

In the present instance we have such a change. The river cut around the small island protected by the dikes above mentioned. This island remained a part of the property of the individual who owned it prior to the change in the riverbed. This is the general rule in cases of avulsion to which Nebraska subscribes. It was held, on rehearing, in Kinkead v. Turgeon, 74 Neb. 580, 109

N. W. 744: "Under the common law a riparian owner of lands on one side of a navigable river above the flow of the tide holds to the thread of the stream, subject to the public easement of navigation, and, if the river suddenly changes its channel and leaves its former bed, the boundary does not change, and he still holds to the same line. This is also the rule of the civil law. * * *

"The common law relating to the rights of such riparian owners is applicable in this state, and is not inconsistent with the constitution or statutes of Nebraska or the constitution of the United States."

Again, in State v. Ecklund, 147 Neb. 508, 23 N. W. 2d 782, it was held: "Where a river changes its main channel, not by slowly excavating and gradually passing over the intervening space to a new position, but changes it by flowing around intervening land, as by gradually, during many years, deepening a smaller channel which was on the other side of an island until it becomes the main channel, the boundary which was fixed as the original main channel remains, under such conditions, in that original channel."

The evidence here will not sustain a finding that plaintiff's predecessors in title still owned, after the change in the riverbed, to the thread of the original stream but clearly establishes retention of ownership of the original island. As to that portion of the land east of the island lying in the original streambed, defendants, as noted, have acquired title by adverse possession.

Accretion has formed on the Iowa bank and also on the island. These accretions were separated by the chute mentioned above. In such instances the law, pertaining to the rival claims, is well established in this state. We have held: "Title by prescription may be acquired to an island in a river or stream, which otherwise would belong to a riparian owner. Accretions to an island so held and occupied for more than the statutory period belong to the owner of the island, and not to the riparian owner to whom the island or a part of it would

otherwise belong." Hartwig v. Berggren, 179 Neb. 718, 140 N. W. 2d 22.

In Durfee v. Keiffer, 168 Neb. 272, 95 N. W. 2d 618, this court ruled: "Where the accretion commences with the shore of an island and afterward extends to the mainland, or any distance short thereof, all the accretion belongs to the owner of the island; but, where accretions to the island and to the mainland eventually meet, the owner of each owns the accretions to the line of contact." See, also, Burket v. Krimlofski, 167 Neb. 45, 91 N. W. 2d 57; Roll v. Martin, 164 Neb. 133, 82 N. W. 2d 34.

Under Nebraska law, titles to riparian lands run to the thread of the contiguous stream. See, Oliver v. Thomas, 173 Neb. 36, 112 N. W. 2d 525; Nebraska v. Iowa, 406 U. S. 117, 92 S. Ct. 1379, 31 L. Ed. 2d 733.

In the present case the contiguous stream between the accretion lands on the Iowa bank and on the island is the chute which separates them. It is therefore apparent that the District Court was correct in designating the boundary line as the thread of the chute.

The judgment of the District Court is affirmed.

AFFIRMED.